# ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2011 AUG -8 AM 9:45

CLERK _____
SO. DIST. OF GA.

| | |
|---|---|
| CLAUDETTE O'NEAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 310-055 |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Claudette O'Neal ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I. BACKGROUND

Plaintiff protectively applied for a period of disability, DIB, and SSI on January 3, 2007, alleging a disability onset date of April 28, 2004. Tr. ("R."), pp. 43, 125-35. The Social Security Administration denied Plaintiff's applications initially, and on reconsideration. R. 43, 52-55, 57-63. Plaintiff then requested a hearing before an

Administrative Law Judge ("ALJ"), and the ALJ held a video hearing on November 21, 2008. R. 43, 64. Plaintiff, who was represented by counsel, testified on her own behalf at the hearing; the ALJ also heard testimony from a Vocational Expert ("VE"). R. 6-35. On December 30, 2008, the ALJ issued an unfavorable decision. R. 40-51.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful employment since the alleged onset of disability (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: cervical spondylosis, status post-right carpal tunnel release, carpal tunnel syndrome on the left, and hypertension (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity ("RFC") to perform a range of light work,[1] except that the claimant is limited to no more than occasional climbing on ladders, ropes, and scaffolds. The claimant is further limited to no more than occasional reaching (including overhead reaching), handling, feeling, gross manipulation and fine manipulation with the right hand; and frequent reaching

---

[1] Light work involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

2

> (including overhead reaching), handling, feeling, gross manipulation, and fine manipulation with the left hand. In light of her RFC, the claimant is capable of performing past relevant work as a garment inspector, circuit board tester, and childcare worker.

R. 43-51.

Because the ALJ determined that Plaintiff could perform her past relevant work, the sequential evaluation process stopped, and the ALJ concluded that Plaintiff "has not been under a 'disability'" as defined in the Social Security Act (20 C.F.R. §§ 404.1520(f) and 416.920(f)), from April 28, 2004 through the date of the ALJ's decision. R. 51. When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ improperly evaluated her RFC, which led to an erroneous determination that she was capable of performing her past relevant work, and (2) the ALJ improperly concluded that certain of her impairments were not severe. (See doc. no. 12 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should be affirmed. (See doc. no. 13 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145

3

(11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner's decision even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal

4

conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Alleged Error in the ALJ's Determination of Plaintiff's RFC

Plaintiff contends that the Commissioner has not demonstrated by substantial evidence that she is able to return to substantial gainful activity. Pl.'s Br., p. 9. In particular, Plaintiff asserts that the ALJ committed error by improperly discounting the opinions of Plaintiff's treating physician, Julian Earls, M.D., when he evaluated Plaintiff's RFC. Id. at 11. The Commissioner disputes this contention, maintaining that the ALJ's RFC determination properly accounted for the medical evidence in the record and is supported by substantial evidence. Comm'r's Br., p. 14.

#### 1. New Evidence of Medical Specialties

There is a threshold issue in this case as to whether the Court may consider new evidence not included in the administrative record that Plaintiff has attached as exhibits to her brief. The evidence consists of documentation of the practice specialties of Dr. Earls and Vasudev Kulkarni, M.D. See Pl.'s Br., Exs. A, B. Plaintiff discusses this evidence in conjunction with her claim that the ALJ erred in his RFC determination, and she contends that Dr. Earls' opinion is entitled to greater weight than Dr. Kulkarni's contradictory opinion because Dr. Earls is Plaintiff's treating physician and a specialist in pain management while Dr. Kulkarni is a one-time consultative examiner with a general practice specialty. Pl.'s Br.,

5

pp. 10-12; doc. no. 14, p. 3 (hereinafter "Pl.'s Reply Br."). The Commissioner maintains that the Court cannot consider the new evidence because it was not part of the administrative record. Comm'r's Br., pp. 12-13. The Commissioner has the better argument.

Notably, Plaintiff does not contend in this case that the new evidence she has attached to her brief warrants remand pursuant to sentence six of 42 U.S.C. § 405(g). Therefore, it is apparent that Plaintiff seeks to rely upon the new evidence in support of her argument that the ALJ's decision is deficient. However, consideration of such evidence for this purpose is plainly foreclosed under clearly established law. That is, a reviewing court, when presented with new evidence that was never presented to the ALJ for review, may only consider whether the new evidence necessitates remand under sentence six of § 405(g); however, a reviewing court may not consider the new evidence in determining whether the Commissioner's final decision is supported by substantial evidence. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998); Keeton v. Department of Health and Human Servs., 21 F.3d 1064, 1068 (11th Cir. 1994); see also Wilson v. Apfel, 179 F.3d 1276, 1278-79 (11th Cir. 1999) (evidence attached to appellant's brief not properly before the court) (citing Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985) (noting general principle that court's review is limited to certified record)); Walters v. Barnhart, 184 F. Supp.2d 1178, 1185 (M.D. Ala. 2001) ("The plaintiff submits to the Court medical records which she did not present to the ALJ or the [AC] in support of her disability claim. These records are not part of the administrative record for review by this court . . . . Consequently, this court has no jurisdiction to evaluate this new evidence in the first instance.").

Plaintiff has offered nothing to suggest that the non-record evidence submitted with

6

her brief is reviewable at this stage, and relevant law makes clear that the Court is without authority to review such evidence in determining whether the Commissioner's decision is supported by substantial evidence. See Falge, 150 F.3d at 1323; Keeton, 21 F.3d at 1068. Accordingly, the Court will exclude such evidence from consideration.

### 2. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physician

Plaintiff further contends that the Commissioner failed to afford Dr. Earls' medical opinions with proper controlling weight given (1) the length of his treatment history, and (2) the consistency of his opinions with those of Plaintiff's other physicians. Pl.'s Br., p. 11; Pl.'s Reply Br., p. 3. The Commissioner disputes that Dr. Earls even qualifies as a treating physician under 20 C.F.R. §§ 404.1502 and 416.902 because he saw Plaintiff only three times in a four-year period. Comm'r's Br., p. 13. Furthermore, the Commissioner contends that in any event, the ALJ properly discredited Dr. Earls' opinions because they were inconsistent with Dr. Earls' earlier treatment records, with another doctor's evaluation, and with Plaintiff's report of her activity level. Id. at 14.

To begin, the Commissioner's regulations require that the opinions of treating physicians be given more weight than non-treating physicians. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The regulations provide, in relevant part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

Id. Furthermore, a "treating source" is a physician with whom a claimant has "an ongoing

7

treatment relationship." 20 C.F.R. §§ 404.1502, 416.902.

It is also well-settled that in the Eleventh Circuit a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

That having been said, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Here, even if the Court were to assume that Dr. Earls is a treating physician, the ALJ satisfactorily explained why he discounted Dr. Earls' final conclusion that Plaintiff could return to work only under a number of restrictions that would, in effect, preclude Plaintiff from any gainful employment. Dr. Earls' final conclusion is found in a form that he submitted to Plaintiff's attorney on September 12, 2008, and is based on his treatment history with Plaintiff. R. 49-50, 315-20. The ALJ addressed this opinion thoroughly, noting Dr. Earls' conclusion that Plaintiff was anticipated to be absent from work about twice a month due to her impairments, and that she could use her right arm, hand, and fingers for fine or

8

gross manipulations and overhead reaching for no more than 15% of workday, or her left arm and hand for the same tasks for no more than 25% of the workday.² R. 49, 317. Moreover, the ALJ noted Dr. Earls' further conclusion that Plaintiff could lift no more than ten pounds occasionally and perform no frequent lifting.³ R. 50, 316.

First, Dr. Earls' conclusions are inconsistent with his prior treatment records. The ALJ explained that during Plaintiff's initial visit with Dr. Earls on December 8, 2004, Dr. Earls described only "some subtle weakness" involving her right grip, which he graded at "4+/5." R. 46, 330, 332. Aside from the "subtle weakness," Plaintiff's motor power testing was 5/5 throughout. R. 46, 332. At a follow-up appointment on March 23, 2005, Dr. Earls noted that Plaintiff felt she was "doing reasonably well" had "improved since the initial evaluation there." R. 49, 326. Plaintiff argues that the ALJ then ignored Dr. Earls' opinions from Plaintiff's most recent evaluation on July 23, 2008, which was the third and final time Dr. Earls saw Plaintiff. Pl.'s Br., p. 12. Plaintiff stresses that during that office visit, Dr. Earls found that Plaintiff's condition had "deteriorated noticeably," and thus the ALJ erred in failing to give appropriate weight to this conclusion. Id. However, as the Commissioner points out, the ALJ cited to all of Dr. Earls' treatment records, and explained that according to each of them, Dr. Earls noted that Plaintiff "was in 'no acute distress,'" that she had "only

---

²According to the VE, a person anticipated to be absent twice per month, or limited to the use restrictions prescribed by Dr. Earls, would be unable to perform any of Plaintiff's past relevant work *or* any other work within the national economy. R. 50.

³According to the VE, if the claimant were limited to only occasional lifting of 10 pounds, she would be unable to do any of her previous work except Circuit Board Tester, which is sedentary work, "and not even that job if she had to lift less than 10 pounds frequently." R.50.

9

'subtle intermittent' weakness involving the upper right extremity," and that her pain medications had been effective with "little to no side effects." R. 49 (citing R. 321-33). From the record, it appears that on the July 23, 2008 visit, Dr. Earls downgraded Plaintiff's grip strength to "4/5." Id.; R. 324. While this does reflect some deterioration, the Court does not agree that by failing to mention the downgrade, the ALJ thus ignored this evidence. In fact, he placed a number of restrictions on Plaintiff's ability to do light work that factored in her hand and arm pain. R. 46; see discussion, infra.

Thus, the Court agrees with the ALJ that Dr. Earls' final conclusion on the severity of Plaintiff's restrictions is simply inconsistent with the totality of his own treatment records, which indicated that Plaintiff was in no acute distress, had only "subtle intermittent weakness," and that her pain was controlled with medication. This is a proper basis for discounting Dr. Earls' final opinion. Edwards, 937 F.2d at 583-84; see 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Second, Dr. Earls' opinion is inconsistent with that of another physician. In this regard, the ALJ explained that Dr. Earls' September 12, 2008 opinion was "refuted by Dr. Kulkarni's opinion," which found a "full range of motion of all joints . . . with graded 5 powers in all extremities." R. 49, 273-80. Plaintiff asserts that the ALJ thereby placed controlling weight on Dr. Kulkarni's opinion, thus elevating the opinion of a one-time consultative examiner over that of a treating physician. Pl.'s Br., p. 11. The Court does not agree. The ALJ was not discounting all of Dr. Earls' opinions, but only the final limitations that Dr. Earls had assessed in his September 12, 2008 form. R. 49. Moreover, the ALJ listed

10

several reasons for discounting that final assessment, and Dr. Kulkarni's opinion was one among many pieces of evidence in the record that controverted Dr. Earls' final assessment. Id. The Court does not agree that by simply pointing out another inconsistency, the ALJ thereby attributed controlling weight to Dr. Kulkarni's medical opinions.

Plaintiff further asserts that the ALJ ignored other physicians' opinions that support Dr. Earls' final assessment of Plaintiff's RFC. Pl.'s Br., pp. 14-15. According to Plaintiff, Dr. David Rehak, an orthopedic surgeon who treated Plaintiff, recommended surgery for her hand condition; Dr. Thomas Craft, who saw Plaintiff when her employer sent her to his office for pain in her hands, found complaints of increasing pain with her hands; and Dr. Mark Samson, who worked with Dr. Craft, completed a claim for disability where he stated that Plaintiff's hand condition was so severe as to render her disabled, and that he believed surgery was necessary. Pl.'s Br., pp. 4-5, 14-15; R. 335-36, 359, 361-62. The Commissioner counters that Dr. Rehak merely gave Plaintiff the option of surgery for her arm pain (along with the alternative of continuing with conservative treatment), and even noted that Plaintiff, who had been off work for a month at that time, did not need to be off work in his opinion. Comm'r's Br., pp. 14-15; R. 335-36. The Commissioner also stresses that Dr. Samson only concluded that surgery was "probable . . . as determined by [Plaintiff's] specialist," and recommended that Plaintiff's medical leave be extended through June of 2004, not indefinitely. Id.; R. 362. The Court is mindful that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*). As explained above, the ALJ provided a number of reasons for his conclusion that Plaintiff's RFC permitted her to continue light work with

11

restrictions. Thus, although he did not acknowledge every one of Plaintiff's physicians' opinions, the Court nevertheless finds that the ALJ's factual findings are supported by substantial evidence in the record. Martin, 894 F.2d at 1529.

Third, as the ALJ noted, Dr. Earls' opinions are inconsistent with Plaintiff's activities of daily living. R. 49. Plaintiff reported that she was able to drive for two and a half hours at a time, shop for groceries and personal items, clean her room, do her laundry, iron, help with cooking and washing dishes, attend church and Bible school weekly, and walk three times per week for two to three miles, depending on the weather. R. 16-19, 47-48. In his opinion, the ALJ stated that the "multitude of activities" that Plaintiff performs require either fine or gross manipulation of her hands, and are "more robust than Dr. Earls['] opinion would allow for." R. 48, 51.

Plaintiff contends that the ALJ failed to consider that she performs tasks like cooking and cleaning for only short stretches throughout the day, and that "everyday activities of short duration" do not disqualify her from receiving disability benefits. Pl.'s Br., p. 15 (citing Lewis, 125 F.3d at 1441); R. 180. However, Lewis is distinguishable from this case: in Lewis, the Eleventh Circuit found that the plaintiff, who suffered from heart disease and a large ventricular aneurysm, was not disqualified from receiving benefits even though he could perform housework for short durations because the medical evidence showing he could not work was otherwise overwhelmingly in his favor. Id. By contrast, the evidence in this case weighs against Dr. Earls' final September 12, 2008 opinion of Plaintiff's RFC for the reasons outlined above. Moreover, the ALJ did *not* fail to consider Plaintiff's limitations in performing activities like cooking and cleaning, as Plaintiff alleges: in fact, the ALJ stated

that Plaintiff's assistance with housework, cooking, dishes, and laundry are each "medium exertional activities," and yet in his RFC assessment, the ALJ limited her to only *light* work, and further limited her to "no more than occasional reaching (including overhead), handling, feeling, gross manipulation and fine manipulation with the right hand; and frequent use of the left hand" for the same activities. R. 46, 51.

Thus, Plaintiff's first argument must fail. The ALJ found that Dr. Earls' opinions were inconsistent with his prior treatment records, with another doctor's evaluation, and with Plaintiff's own report of her activities of daily living; these are all proper bases for discounting a physician's opinion. R. 49; see also 20 C.F.R. §§ 404.1527(d)(4) and 416.927(d)(4). The Court therefore agrees that the substantial evidence in the record supports the ALJ's determination that Plaintiff had the RFC to perform light work with the restrictions the ALJ enumerated.

## B. Failure to Address De Quervain's Tenosynovitis

Plaintiff also argues that the ALJ erred in his failure to determine at step two of the sequential process that Plaintiff's de Quervain's tenosynovitis in her right hand was a "severe" impairment. Pl.'s Br., pp. 16-17; Pl.'s Reply Br., pp. 3-5. To begin, it will be helpful to explain what constitutes a "severe" impairment under the Social Security Act. A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 416.921(a) ("Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and

aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Examples include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that her physical problems significantly affect her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step-two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with his ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*). With these basic principles in mind, the Court turns to Plaintiff's argument.

Although it is true that the ALJ did not specifically mention de Quervain's tenosynovitis,[4] the Commissioner downplays the significance of this in his brief. The Commissioner argues that it is unimportant whether an ALJ classifies particular impairments as severe at step two so long as he finds at least one impairment to be sufficiently severe to proceed to the latter steps of the sequential process. Comm'r's Br., p. 10. The Commissioner further argues that there is no underlying error because it is unclear whether

---

[4]According to a medical website, de Quervain's tenosynovitis involves a painful inflammation of the tendons near the wrist. See http://www.mayoclinic.com/health/de-quervains-tenosynovitis/DS00692 (last visited July 22, 2011). For the purpose of comparison, carpal tunnel presents a painful arm condition caused by a pinched nerve in the wrist. See http://www.mayoclinic.com/health/carpal-tunnel-syndrome/DS00326 (last visited July 22, 2011).

Plaintiff had de Quervain's tenosynovitis at all. Id. at 10-11. Moreover, he argues that even if the ALJ did commit error, it was harmless in this case because the ALJ found that Plaintiff's status post-right carpal tunnel release, which similarly presents a complication of the wrist, was a severe impairment. Id. at 11.

Because an ALJ's step two determination as to the severity of particular impairments has ramifications for the analyses to be undertaken in the subsequent steps, the Court does not endorse the characterization of step two set forth in the Commissioner's brief.[5] Nevertheless, there still remains the question of whether the ALJ's failure to address Plaintiff's de Quervain's tenosynovitis of her right hand was error. If Plaintiff's claims regarding her de Quervain's tenosynovitis were immaterial, the ALJ's failure to consider the results might not be erroneous. See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*) (explaining that there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision). However, remand is required when "an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1219 (11th Cir. 2001). To properly consider a claimant's condition, the ALJ must conduct a meaningful analysis of the symptoms of that condition, including subjective complaints of pain, and the resulting effect on the claimant's

---

[5]For example, severe impairments, unlike non-severe impairments, must typically be included in a hypothetical question asked to the VE, which can affect the resolution of later steps in the sequential process. See, e.g., Loveless v. Massanari, 136 F. Supp.2d 1245, 1250-51 (M.D. Ala. 2001). And it is conceivable that a plaintiff with two or more severe impairments would be able to return to work despite all but one of those impairments. In such a case, failure to address that single, debilitating impairment would be erroneous. Of course, an ALJ must additionally "consider not only the disabling effect of each of the [plaintiff's] ailments individually, but also the combined effect of all [her] impairments." Wiggins, 679 F.2d at 1392.

16

ability to work. See id. at 1220.

Here, Plaintiff alleged that her "worst" problem was the pain in her hands, and that she left her prior job due to hand pain. R. 12-13, 20, 47. The ALJ acknowledged this pain in his opinion, and noted that Plaintiff stated that the pain was worse in her right hand than in her left, and that she also alleged problems with her right shoulder and neck. R. 20-22, 47. He further discussed Plaintiff's description of the severity of her hand and shoulder pain. Id. Moreover, the ALJ clearly found Plaintiff's carpal tunnel to be a severe impairment. R. 46. Although the two conditions are distinct, the record makes clear that de Quervain's tenosynovitis – like carpal tunnel syndrome – would affect Plaintiff's wrist and hand area, and that both could cause pain that would significantly interfere with basic work activities such as lifting, carrying, or handling under the terms of 20 C.F.R. §§ 404.1521(b) and 416.921(b). The ALJ factored wrist limitations into Plaintiff's RFC by limiting her to "no more than occasional reaching (including overhead), handling, feeling, gross manipulation and fine manipulation with the right hand." R. 46. Thus, even though the ALJ did not consider Plaintiff's de Quervain's specifically, he did consider the combination of Plaintiff's hand, shoulder, and neck symptoms, as well as her associated complaints of pain.

Furthermore, as the Court has explained above, the ALJ's determination of Plaintiff's RFC, which took into account the pain and impairment from Plaintiff's carpal tunnel condition and shoulder and neck pain, was supported by substantial evidence. Thus, even if the Court were to accept for the sake of argument that Plaintiff indeed had de Quervain's

tenosynovitis,[6] any error by the ALJ in failing to address this condition was harmless where the ALJ considered the impact of other conditions with similar symptoms and having a similar effect on Plaintiff's ability to work.

## IV.　CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this ___ day of August, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[6]Plaintiff points out that Dr. Rehak offered Plaintiff the option of surgery to treat her de Quervain's tenosynovitis. Pl.'s Br., p. 5; R. 335. However, Dr. Rehak also cautioned Plaintiff that "de Quervain's was most likely not responsible for every ache and pain," and that surgery would therefore "not alleviate those other aches and pains." Comm'r's Br., p. 11; R. 335-36.

18